Margaret Simonian
Julia D. Moudy
DILLON FINDLEY & SIMONIAN, P.C.
1049 W. 5th Avenue, Suite 100
Anchorage, AK 99501
Phone: 907-277-5400
Fax: 907-277-9896
Email: meg@dillonfindley.com
       julia@dillonfindley.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| BRENDA AND ELIA AKELKOK, ) <br> as next friends, and legal guardians ) <br> of C.O., JR., a minor child, ) <br>  ) <br> Plaintiff, ) <br>  ) <br> vs. ) <br>  ) <br> UNITED STATES OF AMERICA, ) <br>  ) <br> Defendant. ) <br>  ) | Case No. 3:25-cv-_____ |

# COMPLAINT

COMES plaintiff, through counsel, the law firm of Dillon Findley & Simonian, P.C., and for plaintiff's respective causes of action, alleges as follows:

1. Brenda and Elia Akelkok, as next friends and legal guardians of plaintiff C.O., Jr., a minor child, resided in Dillingham, Alaska during all times relevant to the facts alleged herein.

2. Defendant Bristol Bay Area Health Corporation is a healthcare facility located in Dillingham, Alaska and is licensed to do business in the State of Alaska.

3. Upon information and belief, Bristol Bay Area Health Corporation and its employees are covered under the Federally Supported Health Centers Assistance Acts of 1992 and 1995, 42 U.S.C. § 233(g)-(n), and provides that for purposes of Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680 are the exclusive remedy for injuries caused by employees of deemed community health center.

4. Plaintiff exhausted his administrative remedy before commencing this litigation.

5. Notice of this claim as required by 28 U.S.C. § 2675 was received in the Claims Office, General Law Division, Office of the General Counsel, U.S. Department of Health and Human Services on December 20, 2023.

6. Plaintiff received notice on March 19, 2025 from the Department of Health and Human Services that the administrative claim was denied.

7. On information and belief, Casey Gokey, M.D. was a healthcare provider employed by the Bristol Bay Area Health Corporation, during all relevant times as alleged herein.

8. On information and belief, William Chythlook, M.D. was a healthcare provider employed by the Bristol Bay Area Health Corporation, during all relevant times as alleged herein.

COMPLAINT
*Brenda & Elia Akelkok, et al. v. United States of America*, Case No. 3:25-cv-_____

9. On information and belief, Derek Bowers, M.D. was a healthcare provider employed by the Bristol Bay Area Health Corporation, during all relevant times as alleged herein.

10. On information and belief, Sarah E. De Almeida E Silva, M.D. was a healthcare provider employed by the Bristol Bay Area Health Corporation, during all relevant times as alleged herein.

11. On information and belief, Matthew Guarino, M.D. was a healthcare provider employed by the Bristol Bay Area Health Corporation, during all relevant times as alleged herein.

12. On information and belief, Adam Woelk, M.D. was a healthcare provider employed by the Bristol Bay Area Health Corporation, during all relevant times as alleged herein.

13. On information and belief, Laura Levoy, M.D. was a healthcare provider employed by the Bristol Bay Area Health Corporation, during all relevant times as alleged herein.

14. On information and belief, Melissa Liner, M.D. was a healthcare provider employed by the Bristol Bay Area Health Corporation, during all relevant times as alleged herein.

15. On information and belief, Marlena Strandir, D.O. was a healthcare provider employed by the Bristol Bay Area Health Corporation, during all relevant times as alleged herein.

COMPLAINT
*Brenda & Elia Akelkok, et al. v. United States of America*, Case No. 3:25-cv-_____

LAW OFFICES
DILLON FINDLEY & SIMONIAN
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

16. On information and belief, Amy Fuller, M.D. was a healthcare provider employed by the Bristol Bay Area Health Corporation, during all relevant times as alleged herein.

17. On information and belief, David Magaret, M.D. was a healthcare provider employed by the Bristol Bay Area Health Corporation, during all relevant times as alleged herein.

18. On information and belief, Daniel Tieva, M.D. was a healthcare provider employed by the Bristol Bay Area Health Corporation, during all relevant times as alleged herein.

19. On information and belief, Hale Loofbourrow, M.D. was a healthcare provider employed by the Bristol Bay Area Health Corporation, during all relevant times as alleged herein.

20. On information and belief, Richard Asher, M.D. was a healthcare provider employed by the Bristol Bay Area Health Corporation, during all relevant times as alleged herein.

21. On information and belief, David Powers, M.D. was a healthcare provider employed by the Bristol Bay Area Health Corporation, during all relevant times as alleged herein.

22. On information and belief, Catherine Hyndman, M.D. was a healthcare provider employed by the Bristol Bay Area Health Corporation, during all relevant times as alleged herein.

COMPLAINT
*Brenda & Elia Akelkok, et al. v. United States of America*, Case No. 3:25-cv-_____

23. At all times relevant the employees of Bristol Bay Area Health Corporation were acting within the scope of their employment relating to the allegations and claims.

## FACTUAL BACKGROUND

24. C.O., Jr. developed persistent high blood pressure between four and five years old that was noted repeatedly by healthcare providers who treated him at Bristol Bay Area Health Corporation ("BBAHC").

25. C.O., Jr.'s hypertension was recorded during well child visits, physicals, and sick child visits repeatedly without any provider attempting to determine the cause of his hypertension.

26. A normal blood pressure (BP) in a five-year-old boy is between 104-120 systolic and 64-75 diastolic pressures.

27. During a visit, on September 18, 2015, to the Emergency Department at Kanakanak Hospital for a sore throat C.O., Jr., who was four years old, was diagnosed with streptococcal sore throat and had a BP of 135/87 and was seen by Dr. Daniel Tieva.

28. On January 20, 2016, C.O., Jr. presented to Kanakanak Hospital Emergency Department for a sore throat, and his BP was 125/68 and was seen by Dr. Hale Loofbourrow and Dr. Richard Asher.

29. On January 22, 2016, C.O., Jr. presented to Kanakanak Hospital walk-in clinic for a persistent sore throat and fever and his BP was 136/81 and pulse was 139.

30. Four months later when C.O., Jr. had pink eye as his complaint, his BP was 122/81 and his pulse was 104.

COMPLAINT
*Brenda & Elia Akelkok, et al. v. United States of America*, Case No. 3:25-cv-_____

LAW OFFICES
DILLON FINDLEY & SIMONIAN
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
Tel: (907) 277-5400  •  Fax: (907) 277-9896

31. During a walk-in visit for a flu shot five months later after he had turned five years old, C.O., Jr.'s blood pressure was 131/68 and his pulse was 113.

32. C.O., Jr. went to the clinic later that year with bronchitis and a rash on his face and in his mouth. His blood pressure was 131/73. Dr. Casey Gokey attributed the rash to sucking on his lower lip. Charlie's hypertension is not commented on in Dr. Gokey's progress note.

33. In June, the month before his sixth birthday, C.O., Jr. came in because of an itchy right eye. His blood pressure was 146/75. The progress note does not mention his elevated blood pressure.

34. During his well-child visit after C.O., Jr. turned six, in August 2017, his blood pressure was 137/65, but this persistent hypertension was not noted by the provider. The note discusses an elevated Body Mass Index and under episodic problems viral upper respiratory tract infections, but no diagnoses are found. C.O., Jr.'s hypertension is not addressed by the physician Dr. William Chythlook.

35. On October 11, 2017, C.O., Jr. was seen for cough with wheezing. His blood pressure was 133/79. C.O., Jr.'s hypertension was not discussed by Dr. David Powers.

36. On December 11, 2017, C.O., Jr. was elevated for fever, cough and vomiting. A chest x-ray showed right lower lobe pneumonia. His blood pressure was 134/73 and pulse was 120. He was treated with amoxicillin. C.O., Jr.'s hypertension was not discussed by Dr. Derek Bowers.

COMPLAINT
*Brenda & Elia Akelkok, et al. v. United States of America*, Case No. 3:25-cv-_____

37. On a walk-in visit, on December 29, 2017, for pneumonia, C.O., Jr. had a BP of 128/70 and was seen by Catherine Hyndman, M.D.

38. C.O., Jr.'s cough persisted throughout 2018 and he was seen several times at the clinic. On October 17, 2018, his BP was 130/72 while being seen by Dr. Matthew Guarino.

39. On January 19, 2020, he was seen at the Emergency Department for a "viral respiratory infection with a croupy cough," and notation of a history of reactive airway disease "not evidence on physical examination." He is noted to have asthma. C.O., Jr.'s blood pressure was not taken during this visit.

40. During a clinic visit to a primary care provider Dr. Sarah E. De Almeida E Silva on May 24, 2021, C.O., Jr. was seen because of a complaint of bilateral pink eyes. He was almost ten years old. His blood pressure was 138/71 but was not commented on in the provider's note.

41. On November 17, 2021, C.O., Jr.'s grandfather brought him to the Pediatric Provider Clinic worried he had an asthma attack because of his loud resounding cough and low-grade fever. Dr. Matthew Guarino diagnosed a viral syndrome, not asthma. Dr. Guarino's chart indicated C.O., Jr.'s blood pressure was 134/84 and his pulse was 117. Dr. Guarino did not comment on C.O., Jr.'s hypertension.

42. After recovering from COVID in January 2022, C.O., Jr. was evaluated in the Emergency Department by Dr. Adam Woelk. C.O., Jr.'s heart rate was 130 and blood pressure was 142/71. Dr. Woelk said C.O., Jr. was recovered from COVID and could

come off of quarantine. He noted C.O., Jr. was tachycardic but attributed that to post COVID reaction. Dr. Woelk states "his blood pressure was also elevated a little at this time."

43. C.O., Jr. was evaluated by Dr. Laura Levoy six days later in the Emergency Department because of a wound on his left ear. C.O., Jr.'s blood pressure was 134/76. Dr. Levoy did not mention C.O., Jr.'s hypertension in her note.

44. On February 24, 2022, C.O., Jr. was seen in the Field Clinic by a primary care resident, Dr. Melissa Liner, because he began experiencing pain in his neck and both heels that was not attributable to any trauma. C.O., Jr.'s grandfather reported he had not been very active and had been complaining of more aches and pains. C.O., Jr.'s blood pressure was 122/66 and his heart rate was 102.

45. Dr. Liner noted C.O., Jr. had "elevated BP x5 visits not with most being in the 130's systolic." Under Assessment/Plan, Dr. Liner noted "Pediatric HTN" or hypertension. This was the first time any provider noted C.O., Jr.'s hypertension. Dr. Liner also noted that C.O., Jr.'s grandfather told her no provider had ever mentioned C.O., Jr. had high blood pressure in the previous visits.

46. Dr. Liner referred C.O., Jr. to the Alaska Native Medical Center pediatric nephrology clinic to help determine etiology and initiate treatment as indicated.

47. Because Dr. Liner was a resident, her evaluation and note was signed off on by Marlena Strandir, D.O. noting she agreed with Dr. Liner's note and recommendations.

48. Marlena Strandir, D.O. was the Chief of Staff at BBAHC.

49. Twelve days later, C.O., Jr.'s grandparents brought him back to the Emergency Department concerned about the hypertension diagnosis and the lack of follow-up relating to the referral. Amy Fuller, M.D. noted that given C.O., Jr.'s 98 percental for weight "I am not surprised that his blood pressure is elevated." Dr. Fuller noted C.O., Jr.'s blood pressure "[i]s not critically elevated that currently requires emergent consultation or admission." And under her Assessment/plan wrote "Elevated BP without diagnosis of hypertension."

50. Dr. Fuller documented calling the pediatric nephrology clinic at Providence Alaska Medical Center and was told "they do not have appointments until June/July."

51. Dr. Fuller noted "peds nephro referral placed and sent" and documented that she "personally spoke to peds subspecialty clinic adn [sic] they have requested his medical records but have not yet received them. They will make him an appointment once his records are received."

52. On March 18, 2022, C.O., Jr. had some lab work and urinalysis done including a CBC and CMP. The medical records do not indicate who ordered the blood work, or why it was ordered. The lab work showed that C.O., Jr. was anemic, with low Hemoglobin and Hematocrit. His platelet count was high consistent with thrombocytosis, which can be caused by acute or chronic inflammation or iron deficiency. His white blood cell count was also elevated.

COMPLAINT
*Brenda & Elia Akelkok, et al. v. United States of America*, Case No. 3:25-cv-_____

53. C.O., Jr.'s CMP showed that his low Albumin and low A/G ratio can indicate inflammation. C.O., Jr.'s Osmolality was low, indicating he had blood dilution. These findings are consistent with chronic anemia or an inflammatory process.

54. No tests were performed to assess C.O., Jr.'s iron levels, despite the anemia.

55. On March 20, 2022, C.O., Jr. was back in the Emergency Department with a nosebleed. C.O., Jr. was again seen by Dr. Amy Fuller. Now, C.O., Jr.'s ongoing problem list included "iron deficiency anemia," "pediatric hypertension," and "prediabetes." Dr. Fuller noted C.O., Jr. "[h]as had multiple hypertensive blood pressure readings and is being worked up for causes of pediatric hypertension."

56. The following day, Dr. Marlena Strandir ordered a Renal Ultrasound. There is no note or visit associated with this Order, but the clinical history states "[e]levated blood pressure diagnosed at age 4 years."

57. C.O., Jr. was never diagnosed with elevated blood pressure at four. He was not diagnosed with this until the month before his ultrasound.

58. The ultrasound showed that C.O., Jr.'s RI measurements are greater than .8 on the left but variable on the right. The radiologist under "Impression" noted these "[e]levated numbers are associated with various renal disorders. Clinical correlation is needed."

59. There is no record indicating a clinical correlation was done.

LAW OFFICES
DILLON FINDLEY & SIMONIAN
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

60. These abnormal findings were not communicated to C.O., Jr.'s grandparents.

61. The following day, on March 22, 2022, two additional Chemistry lab values were drawn for an Aldosterone and Renin Activity, Plasma. There is a clinic visit note associated with this test being ordered. There is no clinic visit note addressing the results.

62. Aldosterone and Renin Activity are used to evaluate if there is a hormonal cause for hypertension in a boy by assessing blood pressure regulation, electrolyte balance and the function of the adrenal and renal hormone systems.

63. C.O., Jr.'s test results were within the normal range, ruling out endocrine cause for his hypertension.

64. There is no medical record acknowledging, addressing or considering these results. There is no medical record reflecting that these results were shared with or explained to C.O., Jr.'s grandparents.

65. A week later on March 29, C.O., Jr. was back in the Emergency Department because his grandfather was concerned that he had pneumonia. C.O., Jr. had been coughing for two weeks. David Magaret, M.D. noted that C.O., Jr. "does have pediatric hypertension and is being evaluated and seen for that."

66. Dr. Magaret notes normal vital signs, but no blood pressure is recorded. He ordered tests for "other viral illnesses" including RSV, COVID, and flu, which came back negative. He diagnosed viral bronchitis and recommended C.O., Jr. return for fever or shortness of breath.

COMPLAINT
*Brenda & Elia Akelkok, et al. v. United States of America*, Case No. 3:25-cv-_____

67. On April 15, C.O., Jr. returned to the Emergency Department with his grandmother who explained he was vomiting frequently and had lost weight. He was seen by Dr. Magaret who noted "he has a complicated story." His cough was persistent. Dr. Magaret noted his pediatric hypertension and "abnormal renal ultrasound" and "this is all being followed up by Pediatric Cardiology and Nephrology." Dr. Magaret ordered a chest x-ray stating "it does not show any acute findings" and that C.O., Jr. stop taking iron for his anemia and diagnosed "vomiting secondary to iron use."

68. The chest x-ray ordered by Dr. Magaret showed "perihilar interstitial opacities and peribronchial thickening." He did not consider a cardiac cause for the chest x-ray findings, calling them normal.

69. Three days later, C.O., Jr. was back in the Emergency Department because his grandparents were worried about his breathing. C.O., Jr. was evaluated by Dr. Magaret who notes C.O., Jr.'s grandparents "think he is extremely short of breath just walking a few steps," and they requested antibiotics.

70. Dr. Magaret notes "vital signs are reviewed. His is a little bit tachycardic," without recording C.O., Jr.'s heart rate or blood pressure. Dr. Magaret ordered a second chest x-ray where the radiologist reported C.O., Jr.'s pleural spaces were clear, but found "[l]ung volumes are low. Interstitial markings are prominent." The radiologist noted "[t]his may be related to low lung volumes and bronchovascular crowding. . . . Clinical correlation is needed."

71. These findings were consistent pulmonary edema or interstitial fluid accumulation seen in heart failure or pulmonary hypertension. Low lung volumes and broncho vascular crowding also support the finding of fluid overload or pulmonary congestions. When the heart cannot pump blood effectively, it causes fluid to back up from the heart into the lungs.

72. In an addendum to Dr. Magaret's record he noted the x-ray was abnormal, but despite the finding of clear air spaces, he diagnosed C.O., Jr. with pneumonia. He did not consider a cardiac cause.

73. On April 25, 2022, C.O., Jr. was seen by Dr. Kevin Kollins in Anchorage at the Pediatric Cardiology of Alaska clinic for his referral visit. Dr. Kollins noted Charlie's "long-standing elevated blood pressures." Dr. Kollins noted that for the past month and half C.O., Jr. had "worsening symptoms with worsening cough, pallor, fatigue, shortness of breath with exertion, loss of appetite, and vomiting." His grandparents reported a 20-pound weight loss since January, with most in the last two weeks.

74. Dr. Kollins' physical examination of C.O., Jr. discovered a +1-2/4 holodiastolic/regurgitant murmur at the Lower Left Sternal Boarder and an S3 gallop when listening to C.O., Jr.'s heart.

75. C.O., Jr. became tachypneic with increased work of breathing anytime he tried to lie down during the examination. C.O., Jr. reported "that it felt like he was drowning" every time he tried to lay down. Dr. Kollins also described C.O., Jr. as pale.

COMPLAINT
*Brenda & Elia Akelkok, et al. v. United States of America*, Case No. 3:25-cv-_____

Case 3:25-cv-00227   Document 1   Filed 09/18/25   Page 13 of 19
Page 13 of 19

76. Dr. Kollins conducted an echocardiogram on C.O., Jr., which uses high frequency sound waves (ultrasound) to produce current pictures of the heart's chambers, valves, walls and blood vessels.

77. The echocardiogram showed severe aortic regurgitation, moderate to severe mitral regurgitation, left heart dilation, and decreased Left Ventricle systolic function with a Left Ventricle ejection fraction of 44%. Dr. Kollins described these findings as consistent with endocarditis and giving the impression of rheumatic heart disease. These critical findings caused Dr. Kollins to immediately contact Alaska Native Medical Center's Pediatric Intensive Care Unit to admit C.O., Jr. Alaska Native Medical Center declined admission.

78. Providence Alaska Medical Center's Pediatric Intensive Care Unit accepted C.O., Jr., and Dr. Kollins immediately began arranging a medevac transfer of C.O., Jr. to Seattle Children's Hospital. He immediately transferred C.O., Jr. to Providence Alaska Medical Center's Pediatric Intensive Care Unit in a wheelchair.

79. Dr. Kollins told C.O., Jr.'s grandparents he would need to be transferred to Seattle Children's Hospital immediately for emergency cardiac surgery.

80. C.O., Jr. was flown to Seattle hours later.

81. At Seattle Children's Hospital, C.O., Jr. was evaluated by the cardiac team who determined his significant cardiac problems were the result of rheumatic fever that had gone undiagnosed and untreated. C.O., Jr.'s heart was so damaged and failing he required surgery for aortic valve preplacement and mitral valve annuloplasty.

COMPLAINT
*Brenda & Elia Akelkok, et al. v. United States of America*, Case No. 3:25-cv-_____

82. Untreated rheumatic fever can lead to permanent and serious heart damage.

83. Rheumatic fever arises from untreated streptococcal bacteria and is easily treated with typical antibiotics when diagnosed in its early stages.

84. C.O., Jr. underwent surgical valve replacement surgery, but after the surgery his hospital course was complicated by severe low cardiac output syndrome, where the heart cannot pump enough blood to meet the body's needs, which results in too little oxygen being delivered to organs and tissues. He also developed vasoplegia, which is a form of shock that causes critically low blood pressures.

85. C.O., Jr. had a near arrest event after the surgery and was taken back to the operating room to stent open his sternum to take any pressure off his heart.

86. C.O., Jr. was placed on Extracorporeal Membrane Oxygenation ("ECMO"), for four days where a machine took over the work of his heart and lungs by removing the blood from his body to the outside where the carbon dioxide was removed and oxygen was added before pumping it back into his body.

87. C.O., Jr. spent over a month in the hospital, much of that time in Seattle Children's Hospital Intensive Care Unit.

88. The damage to C.O., Jr.'s heart is permanent and severe from his undiagnosed hypertension and rheumatic fever. He remains on significant medications for his heart that he will need for the rest of his life. It is likely that he will need future heart surgeries. He has a cascade of physical issues related to heart failure that he continues to suffer from and will face for the rest of his life.

COMPLAINT
*Brenda & Elia Akelkok, et al. v. United States of America*, Case No. 3:25-cv-_____

## COUNT I
## CORPORATE NEGLIGENCE

Plaintiff re-alleges paragraphs 1 through 88 as if fully set forth herein and further alleges as follows:

89. Defendant Bristol Bay Area Health Corporation had a duty to staff, train and supervise medical professionals it employed, contracted with or who are its agents.

90. Bristol Bay Area Health Corporation negligently and/or recklessly failed to formulate, adopt and enforce adequate rules and policies to ensure quality care for its patients, including training and supervision of the medical providers who cared for C.O., Jr.

91. As a direct and proximate cause of Bristol Bay Area Health Corporation's conduct and failures as above alleged, C.O., Jr. suffered irreparable and permanent damage to his heart from a treatable and avoidable cause.

## COUNT II
## MEDICAL MALPRACTICE

Plaintiff re-alleges paragraphs 1 through 91 as if fully set forth herein and further alleges as follows:

92. All of the healthcare providers, individually and/or collectively, owed a duty to C.O., Jr. to assess, diagnose, identify, and treat his pediatric hypertension within the appropriate standard of care.

LAW OFFICES
DILLON FINDLEY & SIMONIAN
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

93. All of the healthcare providers, individually and/or collectively, were each negligent and/or reckless in failing to appropriately recognize, assess, and treat C.O., Jr.'s chronic pediatric hypertension in one or more of the following ways: 1) failing to document and assess C.O., Jr.'s hypertension; 2) failing to identify or attempt to identify the cause of his hypertension; 3) failing to apply an appropriate differential diagnosis; 4) failing to treat the cause of C.O., Jr.'s hypertension; 5) failing to consider a timely referral for C.O., Jr.'s condition; 6) failing to timely diagnose chronic pediatric hypertension; and 7) failing to appropriately monitor C.O., Jr.'s chronic hypertension.

94. As a direct and proximate cause of this conduct as above alleged, C.O., Jr. suffered severe permanent injury, past and future pain and suffering, past medical expenses, future medical expenses and life-long physical limitations with economic consequences.

## COUNT III
## MEDICAL MALPRACTICE – BRISTOL BAY AREA HEALTH CORPORATION

Plaintiff re-alleges paragraphs 1 through 94 as if fully set forth herein and further alleges as follows:

95. On information and belief, healthcare providers caring for C.O., Jr. were employees of defendant Bristol Bay Area Health Corporation during all times as alleged herein.

96. In that any and all healthcare providers, including medical staff, were negligent and/or reckless in treating C.O., Jr., defendant Bristol Bay Area Health Corporation is responsible for the pain and suffering and economic losses alleged herein under the doctrine of *respondeat superior* and/or apparent authority.

97. To the extent that healthcare providers at Bristol Bay Area Health Corporation were negligent and/or reckless, defendant Bristol Bay Area Health Corporation is vicariously and directly liable to C.O., Jr. for the acts as alleged herein.

98. As a direct and proximate cause of Bristol Bay Area Health Corporation's conduct as above alleged, C.O., Jr. suffered severe permanent injury, past and future pain and suffering, past medical expenses, future medical expenses and life-long physical limitations with economic consequences.

WHEREFORE, Plaintiff prays for relief as follows:

1. For compensatory damages in excess of $100,000.00, the exact amount to be proven at trial, including, but not limited to, compensation for severe permanent injury, past and future pain and suffering, past medical expenses, future medical expenses and life-long physical limitations with economic consequences;

2. For costs, attorney's fees and pre-judgment interest; and

3. For such other and further relief as the Court deems just and proper.

///

///

COMPLAINT
*Brenda & Elia Akelkok, et al. v. United States of America*, Case No. 3:25-cv-_____

DATED this 18th day of September 2025, at Anchorage, Alaska.

DILLON FINDLEY & SIMONIAN, P.C.
Attorneys for Plaintiff

By: /s/ Margaret Simonian
Margaret Simonian, ABA No. 9901001
1049 W. 5th Avenue, Suite 100
Anchorage, AK 99501
Phone: 907-277-5400
Fax: 907-277-9896
Email: meg@dillonfindley.com

By: /s/ Julia D. Moudy
Julia D. Moudy, ABA No. 9411112
1049 W. 5th Avenue, Suite 100
Anchorage, AK 99501
Phone: 907-277-5400
Fax: 907-277-9896
Email: julia@dillonfindley.com

LAW OFFICES
DILLON FINDLEY & SIMONIAN
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896